IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M. & E.M.,<br><br>    Plaintiff,<br><br>  v.<br><br>LAFAYETTE SCHOOL DISTRICT,<br><br>    Defendant. | No. C 09-04624 SI<br><br>**ORDER RE: LAFAYETTE DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SANCTIONS; AND DGS DEFENDANTS' MOTION TO DISMISS** |

On October 25, 2010, the Court heard argument on defendants Lafayette School District and Lafayette Board of Education (collectively "Lafayette Defendants") motion to dismiss portions of the Second Amended Complaint and motion for sanctions, as well as the motion to dismiss filed by defendants California Department of General Services ("DGS") and DGS Director Will Bush (collectively "DGS Defendants"). Having considered the arguments of counsel and the papers submitted, the Court hereby rules as follows.

**BACKGROUND**

This action, brought under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983, concerns a dispute over the educational opportunities provided to plaintiff C.M., an eleven-year-old child with learning disabilities. The basic factual and procedural background of these actions was set forth in the Court's February 1, 2010 order denying plaintiffs' motion for a temporary restraining order and preliminary injunction. (Docket No. 36).

Plaintiffs challenge a July 1, 2009 ALJ decision stemming from an administrative complaint

filed in December 2008 by defendant Lafayette School District ("District"). In that decision, the ALJ found that plaintiffs were entitled to reimbursement of half the expenses associated with the independent educational evaluation ("IEE") they had requested, and that the District had a right to proceed with its own reassessment of the child. The ALJ declined to rule on the appropriateness of the District's initial April assessment of the child because it concluded that C.M.'s parents were entitled to reimbursement for the IEE in any event. Plaintiffs now challenge both affirmative findings and contend that the ALJ erred by failing to make any findings regarding the sufficiency of the District's April 2007 evaluation.

## LEGAL STANDARD

### I.   Motion to dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### II.   Motion for sanctions

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

2

Imposition of costs under this statute requires a finding of recklessness or bad faith on the part of the attorney sanctioned. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

Additionally, a court has the inherent authority to sanction parties for bad faith conduct in the course of litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). This authority is independent of, and not constrained by, statutory sources of authority for imposing such sanctions. *See id.* at 50. In order to sanction a party pursuant to this inherent authority, a court must find that the party acted in bad faith. *See Primus Auto. Fin'l Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). Bad faith means that the party or attorney acted "vexatiously, wantonly, or for oppressive reasons." *Id.* "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Bad faith can also consist of "delaying or disrupting the litigation." *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978).

**DISCUSSION**

**I.    Motion to dismiss by Lafayette Defendants**

The Lafayette defendants move for dismissal of plaintiffs' Third and Fourth Claims for Relief and to strike plaintiffs' request for expert fees. The Third Claim for Relief seeks relief for violations of the IDEA, Section 504 of the Rehabilitation Act ("Section 504"), and the Fourteenth Amendment through 42 U.S.C. § 1983 in connection with defendants' offer to conduct a reassessment of C.M. after plaintiffs sought an IEE.[1] Plaintiffs allege that Dr. Dana Sassone, Director of Student Services at C.M.'s school, "sought to compel reassessment of C.M. in response to Plaintiffs' request for an IEE under color of law as a pretext for District Defendant's intention to intimidate Plaintiffs, to retaliate against them for their advocacy for C.M. and to obstruct their due process right to seek and obtain an IEE," and that the District and the Board "permitted, endorsed, enabled, authorized and/or acted in concert with Dr. Sassone." SAC ¶¶ 51, 112, 117. The Fourth Claim for Relief alleges violations of the IDEA and 42

---

[1] The Court construes all of plaintiffs' Fourteenth Amendment claims as being raised under Section 1983.

3

U.S.C. § 1983 relating to the Lafayette defendants' actions in connection with the compliance complaint plaintiffs submitted to the state. In the compliance complaint, plaintiffs claimed that the District failed to comply with IDEA procedural requirements after plaintiffs requested an IEE. *Id.* ¶ 64. According to plaintiffs, the Lafayette Defendants "sought a stay of CDE's investigation of Plaintiffs' compliance [complaint] on false pretenses and with the intent to obstruct and deny Plaintiffs express due process rights" by representing that the same issue raised in the compliance complaint was pending before an ALJ. *Id.* ¶¶ 127.

### A. IDEA Claims

The Third and Fourth Causes of Action allege violations of the IDEA in connection with the Lafayette Defendants' reassessment offer and their representation to CDE that the issues raised in plaintiffs' compliance complaint were also presented to the ALJ.

#### 1. Third cause of action

The Court dismissed plaintiffs' third cause of action previously because plaintiffs had failed to point to a statutory provision that was violated by the offer to conduct a reassessment of C.M. at public expense in response to plaintiffs' IEE request.

Plaintiffs now clarify their theory that Dr. Sassone's offer was improper not because the action itself was prohibited, but rather because IDEA implementing regulations required the school district to fund the IEE or seek a due process hearing "without unnecessary delay," and Dr. Sassone's offer led to unnecessary delay. *See* 34 C.F.R. § 300.502(b)(2)(I). Additionally, plaintiffs argue that the Lafayette defendants violated 20 U.S.C. §§ 1415(a) and 1415(b), which requires IDEA-funded state and local educational agencies to "establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies" including by providing "[a]n opportunity for the parents . . . to obtain an independent educational evaluation of [a child with a disability]."

Plaintiffs argue that 20 U.S.C. § 1415(i)(2) provides an express right of action for plaintiffs to

4

bring this claim. It does not. Section 1415(i)(2) permits suit by parties aggrieved by findings and decisions made under Subsections (f), (k) and (i) of Section 1415, not under Subsections (a) and (b). Plaintiffs argue that Section 1415(i)(2) must provide an express right of action to enforce Subsections (a) and (b) (as interpreted by 34 C.F.R. § 300.502(b)(2)(i)), because otherwise "§ 1415 procedural safeguards necessary for a FAPE would be illusory." Opp. Br. 5. The Court disagrees. Plaintiffs say that they already challenged Dr. Sassone and the Lafayette defendants' response to their request for an IEE at the due process hearing. *See* SAC ¶ 74. Plaintiffs are entitled to seek review of the ALJ's decision at the due process hearing. And in fact, in seeking review of the ALJ's decision in claim one in this case, plaintiffs raise their concerns over the Lafayette defendants' response to their IEE request. *See* SAC ¶ 96.

Next, plaintiffs argue that IDEA grants them an implied right of action to enforce IDEA procedural safeguards. Plaintiffs cite no case recognizing an implied right of action to enforce provisions of the IDEA. Nor would recognition of an implied right of action be consistent with 20 U.S.C. § 1415, the very section of the IDEA cited by plaintiffs, which explicitly requires parents to raise concerns in administrative hearings and then provides an express right of action for review of the administrative determinations. *See Cannon v. University of Chicago*, 441 U.S. 677, 688 n.9 (1979) (discussing factors for determining whether a statute provides for an implied right of action).

This IDEA claim is DISMISSED with prejudice.

### 2. Fourth cause of action

The Court previously dismissed plaintiffs' fourth cause of action because plaintiffs had failed to point to a statutory provision that was violated by the Lafayette defendants' representation to CDE that it should stay its investigation of plaintiffs' compliance complaint.

In its Second Amended Complaint, plaintiffs have clarified their theory that the Lafayette defendants violated 20 U.S.C. § 1415(a) by obstructing plaintiffs' right to secure a FAPE: plaintiffs were endeavoring to secure a FAPE via their CDE compliance complaint and defendants wrongfully prevented the complaint from being heard. Even assuming that plaintiffs have alleged a violation of Section 1415(a), they again face the problem that IDEA provides them with no right of action to raise

5

this issue independently of an appeal of an administrative decision.

This IDEA claim is DISMISSED with prejudice.

### B. Section 504 Claims

Plaintiffs' third claim also alleges violations of Section 504 of the Rehabilitation Act. Plaintiffs allege that the Lafayette defendants violated Section 504's anti-discrimination and anti-retaliation provisions by seeking "to compel reassessment of C.M. in response to Plaintiffs' request for an IEE." SAC ¶ 112. The Court dismissed this claim previously because plaintiffs failed to provide sufficient factual support for this claim and failed to explain how defendants' wish to obtain a current assessment of C.M. at public expense constituted discriminatory or retaliatory action.

#### 1. Discrimination

Plaintiffs' discrimination claim remains convoluted. Plaintiffs essentially allege that the Lafayette defendants sought to compel reassessment because C.M had a disability. SAC ¶ 113. The entire system of assessment, reassessment, and independent assessment only comes into play if a child is disabled, however, and plaintiffs fail to explain either in the complaint or in their briefing on this motion what they mean by discrimination.

#### 2. Retaliation

In contrast, plaintiffs have amended their complaint to clarify their retaliation claim. *See* SAC ¶¶ 112–13. Plaintiffs essentially argue that they requested an IEE, which they had a right to do; that federal and California law put in place a procedure for the Lafayette defendants to follow once plaintiffs made the request; and that the Lafayette defendants responded to the request in a way that failed to follow that procedure, with the purpose of intimidating and retaliating against plaintiffs for making the request. They argue that the Lafayette defendants also retaliated against them for requesting a complaint investigation from CDE.

Both parties agree that Section 504 provides a private right of action for retaliation claims. *See Alex G. ex rel. Dr. Steven G. v. Bd. of Trustees of Davis Joint Unified Sch. Dist.*, 387 F. Supp. 2d 1119,

1128 (E.D. Cal. 2005).

The Lafayette defendants argue that plaintiffs have failed to allege facts for each element of the retaliation claim: protected activity; knowledge of the protected activity; adverse action; and a causal connection between the protected activity and adverse action. The Court disagrees. Plaintiffs identified their request for an IEE and their CDE complaint. *See* SAC ¶¶ 112, 113. Seeking a reasonable accommodation of a child's disability constitutes protected activity under Section 504. *Weixel v. Bd. of Ed. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002); *see also Alex G.*, 387 F. Supp. 2d at 1128 (making IDEA-based requests and compliance complaints are protected activities). Plaintiffs also allege knowledge, stating that they provided the Lafayette defendants with written notice that they were requesting an IEE, SAC ¶ 47, that they served the Lafayette defendants with a copy of the CDE complaint, and that CDE sent written notice of the complaints to the Lafayette defendants, SAC ¶¶ 64–65.

Plaintiffs also argue that the Lafayette defendants' attempt to compel reassessment was an adverse action. SAC ¶ 112. Whether an action is materially adverse is a question of fact, and ultimately a plaintiff must show that the action might well have dissuaded a reasonable person in his position from engaging in the protected activity. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 71 (2006). Defendant argues that compelling reassessment is not an adverse action because it does not violate any law. As discussed in the previous section, however, plaintiffs argue that the Lafayette defendants' action constituted unnecessary delay in violation of 34 C.F.R. § 300.502(b)(2)(i). Defendants also question how C.M.'s anxiety about being tested at school could be relevant to a retaliation claim, since plaintiffs wished for their son to be retested. *See* SAC ¶ 119. But plaintiffs make clear that the anxiety was related to testing in school, not to testing outside of school; and in any event plaintiffs' obligation at this stage is simply to state a plausible claim for relief. While plaintiffs may well have a difficult time proving that compelling reassessment is an adverse action, their allegation of an adverse action is sufficient to survive a motion to dismiss.

Finally, plaintiffs allege that the Lafayette defendants acted "in response to Plaintiffs' request" and "to retaliate against them." SAC ¶ 112. Causation too is a question of fact. *Cf. Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009). Plaintiffs' allegation here is sufficient to survive a motion to dismiss

as well.

The Court is DENIES the Lafayette defendants' motion to dismiss plaintiffs' Section 504 retaliation claim. However, the Court notes that plaintiffs' allegations that the Lafayette defendants failed to establish and maintain procedures to safeguard plaintiffs is not relevant to this claim, as there is no allegation that this failure was retaliatory. *See* SAC ¶ 115. Additionally, plaintiffs rest their claim on the theory that the Lafayette defendants are liable for Dr. Sassone's actions, which they will need to prove in order to succeed.

### C. Procedural due process claims

Plaintiffs' third and fourth claims each allege that the Lafayette defendants violated their constitutional rights to procedural due process.

The Court has previously granted the Lafayette defendants' motion to dismiss IDEA and Fifth Amendment claims brought under 42 U.S.C. § 1983 without leave to amend. Plaintiffs argue that their new Fourteenth Amendment claim is not precluded by the Court's previous dismissal of their Fifth Amendment claim. Assuming this contention to be true, plaintiffs would still have been required to request leave of the Court to amend to state a new cause of action at this stage of the litigation. Fed. R. Civ. P. 15(a)(2). Because such leave is granted liberally, and had plaintiffs requested leave the Court would have been required to analyze the proposed Fourteenth Amendment claim at that time, the Court will consider plaintiffs' proposed procedural due process challenge. *See Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1010 (9th Cir. 2008).

"A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010). In claim three, plaintiffs argue that C.M. has a constitutionally protected right to a public education, and that the Lafayette defendants deprived him of that right by endorsing or otherwise failing to maintain procedures to prevent Dr. Sassone's attempt to compel reassessment of C.M. SAC ¶¶ 117, 118, 120. In claim four, plaintiffs allege that their "right to seek a compliance complaint is protected by the Fourteenth Amendment as a right to petition the government for redress of grievances and a right to due process

8

of law." SAC ¶ 123.

Even if plaintiffs have alleged deprivations of liberty or property interests, they have not explained how they lacked adequate procedural protections. Plaintiffs participated in an IDEA due process hearings and are appealing the ALJ's decision in claim one in this case. Plaintiffs have not identified any arguments that they were precluded from raising in the due process hearing and which they are precluded from raising here. Even if the Lafayette defendants did not provide plaintiffs with procedures required by the IDEA or the California Code of Regulations, as alleged, plaintiffs were provided with constitutionally sufficient procedures to protect their son's right to a public education and their right to seek compliance. Plaintiffs themselves concede that if the IDEA provides relief, they do not have a Fourteenth Amendment claim. Opp. Br. 11. This remains true even where the IDEA does not provide for an express right of action to challenge the Lafayette defendants' actions directly in court.

The Court DISMISSES the Section 1983 claims with prejudice.

### D. Expert fees

Plaintiffs request expert witness fees in their Second and Fourth Claims for Relief. The Lafayette defendants move to strike the requests in Paragraphs 110 and 131 of the complaint, and in Paragraph 11 in their Prayer for Relief. As a preliminary matter, because the Fourth Claim for Relief is dismissed in its entirety, with prejudice, the Court need only address Paragraphs 110 and 11.

The Court will now quote its own order previously striking plaintiffs' request:

> The Lafayette Defendants also move to strike plaintiffs' request for expert fees in connection with their claim for attorneys' fees. IDEA's attorneys' fees provision provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). The Supreme Court has expressly rejected the proposition that IDEA's attorneys' fees provision permits recovery of expert fees, holding that the statute "does not even hint that acceptance of IDEA funds makes a State responsible for reimbursing prevailing parents for services rendered by experts." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006). Plaintiffs attempt to distinguish *Arlington* by arguing that they do not seek expert fees as a component of attorneys' fees, but rather as "an element of damages." 09-4624 Oppo. at 24. This supposed distinction, however, is belied by the complaint. Plaintiffs' Second Claim for Relief expressly states that they are seeking, "as prevailing party, all attorney fees and costs, *including expert fees*, incurred in connection with District's due process hearing." 09-4624 FAC ¶ 49 (emphasis added). Plaintiffs' claim is clearly foreclosed by *Arlington*, and the motion to strike is GRANTED with prejudice.

9

(Docket No. 60.) This statement is no less applicable in this case, as all but the first three words quoted from Paragraph 49 of the First Amended Complaint still appear, verbatim, in Paragraph 11 of the Prayer for Relief in the Second Amended Complaint. The Lafayette defendants' motion to strike is GRANTED with prejudice.

### III. Motions by DGS Defendants

In their Fifth Claim for Relief, plaintiffs allege that the DGS defendants "failed to establish and maintain policies and procedures to ensure that [the Office of Administrative Hearings, Special Education Division] conducts hearings in conformity with established law and the IDEA." SAC ¶ 134. The DGS defendants have filed a motion to dismiss.

Plaintiffs' claim is brought under IDEA and the Fourteenth Amendment. Like the IDEA claim against the Lafayette defendants, the IDEA claim against the DGS defendants alleges a violation of 20 U.S.C. § 1415(a), a provision that plaintiffs do not have a private right of action to enforce. With regard to the Fourteenth Amendment claim, plaintiffs have not explained how failing to conduct the due process hearing in strict conformity with a statute denied plaintiffs *constitutionally* required process. For the reasons discussed in detail above, plaintiffs' Fifth Claim for Relief is DISMISSED with prejudice.

### IV. Lafayette defendants' motion for sanctions

The Lafayette defendants have moved for sanctions under 28 U.S.C. § 1927 and the Court's inherent powers. They argue that plaintiffs filed their Second Amended Complaint with deliberate disregard of the Court's order dismissing portions of plaintiffs' First Amended Complaint. In particular, the Lafayette defendants say that plaintiffs reasserted Section 1983 claims that were dismissed with prejudice, requested expert fees even though its First Amended Complaint request was stricken with prejudice, and failed to address the problems with the claims that had been dismissed with leave to amend. They request attorney's fees in the amount of $18,799 for the time spent briefing their motion to dismiss and their motion for sanctions.

10

Plaintiffs argue that their Second Amended Complaint was "appropriate and necessary," and therefore cannot constitute grounds for Section 1927 sanctions. They also argue that they did not violate the court's dismissal order, which they interpret as having dismissed their Fifth Amendment-based claims (rather than all Section 1983 claims) and their request for expert fees as costs (rather than as an element of damages and as an equitable remedy). They argue that their attempts to amend the complaint in response to the court's dismissal order were made in good faith and were founded upon legal grounds upon which reasonable minds might reasonably disagree, even if the claims are ultimately dismissed.

The Court finds that sanctions are not warranted. However, the Court admonishes plaintiffs' counsel that the re-filing of causes of action previously found untenable is improper. Even if counsel believed that the Court's previous order did not prohibit plaintiffs from raising a Fourteenth Amendment claim, counsel was required to request leave to raise any new claim before filing the Second Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2). Additionally, if counsel believed that the Court's previous order did not preclude it from claiming expert fees as damages or part of an equitable remedy, counsel should have changed all language in the complaint that construed expert fees as a component of attorney's fees and costs.

## V.     **Plaintiffs' administrative motion to relate**

Plaintiffs have filed an administrative motion to relate this case and case 4:10-cv-4223-LB.

The Court dismissed an earlier related case without prejudice, finding that it was filed prematurely because there was no final administrative decision in the underlying proceedings. *See* 3:09-cv-03668-SI, Doc. No. 53. Plaintiffs have now filed case 4:10-cv-4223-LB, which they describe as an appeal of a final administrative decision in those same proceedings. Defendants have asked the Court not to rule on the motion until they are served in case 4:10-cv-4223-LB, noting that they have not received a copy of the complaint and that the complaint is not available publically on the Case Management/Electronic Case Filing system (CM/ECF).

According to Local Rule 3-12(a),

> An action is related to another when:
> (1) The actions concern substantially the same parties, property, transaction or event; and

11

(2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges.

Additionally, when a motion is filed, "the Judge assigned to the earliest-filed case shall act on the motion or referral within 14 days after the date a response is due," which in this case has already passed. Local Rule 3-12(f)(1).

The Court has a copy of the complaint in case 4:10-cv-4223-LB, which it has reviewed. Having determined that the cases are related, the Court has already notified the Clerk that it is relating the cases.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART the Lafayette defendants' motion to dismiss (doc. 64); GRANTS the DGS defendants' motion to dismiss with prejudice (doc. 63); and DENIES the Lafayette defendants' motion for sanctions (doc. 65).

The only claims that remain in this case are claims one and two, and claim three to the extent that it is based on a theory of retaliation under Section 504 of the Rehabilitation Act. Plaintiffs do not have leave to make further amendments.

**IT IS SO ORDERED.**

Dated: December 6, 2010

SUSAN ILLSTON
United States District Judge